ORIGINAL

18 MAG 1024

Approved: _____
         ANDEN CHOW
         Assistant United States Attorney
         GABRIEL W GANEWSTEIN

Before:  HONORABLE STEWART D. AARON
         United States Magistrate Judge
         Southern District of New York

U.S. DISTRICT COURT FILED
FEB 07 2018
S.D. OF N.Y. DS

- - - - - - - - - - - - - - - - - - x
                                    :    DOC #_____
UNITED STATES OF AMERICA            :    **COMPLAINT**
                                    :
     - v. -                         :    Violations of
                                    :    18 U.S.C. §§ 1951,
KAREEM GRAVES,                      :    924(c), and 2; 21
     a/k/a "Pook,"                  :    U.S.C. § 846.
RAVON WALKER,                       :
     a/k/a "Ray," and               :    COUNTY OF OFFENSE:
VERNON WALKER,                      :    BRONX, NEW YORK
                                    :
            Defendants.             :
                                    :
- - - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

     JOSEPH KING, being duly sworn, deposes and says that he is a Task Force Officer with the Drug Enforcement Administration ("DEA"), and charges as follows:

## COUNT ONE
### (Conspiracy to Commit Hobbs Act Robbery)

     1.  From at least in or about January 2018 up to and including February 2018, in the Southern District of New York and elsewhere, KAREEM GRAVES, a/k/a "Pook," RAVON WALKER, a/k/a "Ray," and VERNON WALKER, the defendants, unlawfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), and would and did thereby obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, GRAVES, VERNON WALKER, and RAVON WALKER conspired to commit the robbery of an individual believed to be a narcotics dealer in the Bronx, New York.

2

(Title 18, United States Code, Section 1951.)

## COUNT TWO
### (Narcotics Conspiracy)

2.  From at least in or about January 2018 up to and including February 2018, in the Southern District of New York and elsewhere, KAREEM GRAVES, a/k/a "Pook," RAVON WALKER, a/k/a "Ray," and VERNON WALKER, the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

3.  It was a part and an object of the conspiracy that KAREEM GRAVES, a/k/a "Pook," RAVON WALKER, a/k/a "Ray," and VERNON WALKER, the defendants, and others known and unknown, would and did distribute and possess with the intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

4.  The controlled substance that KAREEM GRAVES, a/k/a "Pook," RAVON WALKER, a/k/a "Ray," and VERNON WALKER, the defendants, conspired to distribute and possess with the intent to distribute was one kilogram and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

## COUNT THREE
### (Firearms Offense)

5.  From at least in or about January 2018 up to and including February 2018, in the Southern District of New York and elsewhere, KAREEM GRAVES, a/k/a "Pook," RAVON WALKER, a/k/a "Ray," and VERNON WALKER, the defendants, during and in relation to a crime of violence and a drug trafficking crime for which they may be prosecuted in a court of the United States, namely, the robbery conspiracy charged in Count One of this Complaint and the narcotics conspiracy charged in Count Two of this Complaint, knowingly did use and carry a firearm, and, in furtherance of such crime, did possess a firearm, and did aid and abet the same, to wit, GRAVES, RAVON WALKER, and VERNON WALKER, possessed and aided and abetted the possession of firearms in anticipation of committing a robbery of an

3

individual believed to be a narcotics dealer in the Bronx, New York.

(Title 18, United States Code, Sections 924(c) and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

6.  I am a Task Force Officer with the DEA and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation of this matter, my conversations with law enforcement agents, witnesses, and others, as well as my examination of reports, records, and audio recordings. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated. Where figures, calculations, and dates are set forth herein, they are approximate, unless stated otherwise.

7.  During the course of this investigation, other law enforcement agents and I have worked with two confidential sources ("CS-1" and "CS-2"). CS-1 and CS-2 are paid DEA informants who have been providing information to the DEA since approximately 2005 and 2008, respectively. Information provided by CS-1 and CS-2 as part of this investigation and other investigations has proven reliable in the past and been corroborated by other independent evidence, including, among other things, surveillance by law enforcement as described herein.

8.  Based on my participation in this investigation and my conversations with CS-1 and CS-2, I have learned the following, among other things:

    a.  On or about January 10, 2017, CS-1 and CS-2 had a meeting with KAREEM GRAVES, a/k/a "Pook," and RAVON WALKER, a/k/a "Ray," the defendants, in the vicinity of 167th Street and Sheridan Avenue in the Bronx, New York. During the meeting, CS-1 and CS-2 told GRAVES and RAVON WALKER, in substance and in part, that CS-1 and CS-2 knew an individual ("Individual-1") who transported drugs from Texas to New York on behalf of others from Mexico, and offered to provide information to GRAVES and

4

RAVON WALKER about the next delivery so that GRAVES and RAVON WALKER could rob the transport. CS-1 and CS-2 also told GRAVES and RAVON WALKER, in substance and in part, that the delivery of drugs would contain approximately 10 to 15 kilograms of heroin. GRAVES and RAVON WALKER explained that they wanted to have another meeting to discuss the robbery further.

        b.    On or about January 24, 2018, CS-1 and CS-2 had a meeting with GRAVES and RAVON WALKER in the vicinity of 166th Street and Sheridan Avenue in the Bronx, New York. During the meeting, GRAVES and WALKER expressed that they were prepared to commit the robbery and would include another one of their associates. GRAVES and WALKER stated that they would bring guns to commit the robbery. During the meeting, CS-1 and CS-2 introduced GRAVES and RAVON WALKER to an another confidential source ("CS-3")[1] purporting to be Individual-1. CS-3 informed GRAVES and RAVON WALKER that CS-3 was the driver for individuals from Mexico who were involved in the transportation of drugs. GRAVES and WALKER also inquired about the destination of the drugs so that they could check the area.

        c.    On or about February 1, 2018, CS-1, CS-2, and CS-3 had a meeting with GRAVES and RAVON WALKER in the vicinity of 165th Street and Sherman Avenue in the Bronx, New York. CS-3 informed GRAVES and RAVON WALKER that the next delivery of drugs to New York City was scheduled for approximately February 6, 2018. CS-3 provided a description of the individuals who would accompany CS-3 when the drugs were transported.

        d.    On or about February 5, 2018, CS-1 and CS-2 had a meeting with GRAVES and RAVON WALKER, during which CS-1, CS-2, GRAVES, and RAVON WALKER drove together to the vicinity of 218th Street and Broadway to check out the location where the robbery would take place.

    9.    Based on my participation in surveillance on February 6, 2018, and my conversations with CS-1 and CS-2 and other law enforcement agents who conducted surveillance, I have learned the following, among other things:

---

[1] Information provided by CS-3 as part of this investigation and other investigations has proven reliable in the past and been corroborated by other independent evidence, including, among other things, surveillance by law enforcement as described herein.

5

a.  At approximately 5:00 p.m., law enforcement agents met with CS-1 and CS-2 in a vehicle operated by CS-1 (the "CS Vehicle"). Law enforcement agents searched CS-1, CS-2 and the CS Vehicle to ensure the absence of contraband.

b.  Under surveillance by law enforcement agents, CS-1 and CS-2 drove to the vicinity of Third Avenue and Tremont Avenue in the Bronx, New York. At that location, KAREEM GRAVES, a/k/a "Pook," the defendant, entered the CS Vehicle.

c.  Once GRAVES got in the vehicle, law enforcement agents followed the CS Vehicle as it drove to the vicinity of 165th and Sherman Avenue in the Bronx, New York. At that location, GRAVES exited the vehicle and met with four individuals, including RAVON WALKER, a/k/a "Ray," and VERNON WALKER, the defendants, on the sidewalk. GRAVES, RAVON WALKER, and VERNON WALKER then got into the back seat of the CS Vehicle. Based on my conversation with CS-2, I have learned the following, among other things, about the meeting that took place in the CS Vehicle:

   i.  RAVON WALKER informed CS-1 and CS-2 that the individual who was supposed to drive GRAVES, RAVON WALKER, and VERNON WALKER in order to commit the robbery was unavailable. RAVON WALKER asked whether the CS Vehicle could be used instead. CS-1 and CS-2 agreed.

   ii. GRAVES informed CS-1 and CS-2 that they (GRAVES, RAVON WALKER, and VERNON WALKER) would go and get the guns.

d.  Law enforcement agents observed GRAVES, RAVON WALKER, and VERNON WALKER exit the CS Vehicle and walk into 1060 Sherman Avenue. Minutes later, GRAVES, RAVON WALKER, and VERNON WALKER exited 1060 Sherman Avenue and got back into the back seat of the CS Vehicle. Based on my conversation with CS-2, I have learned the following, among other things, about the meeting that took place in the CS Vehicle:

   i.  RAVON WALKER and VERNON WALKER each entered the CS Vehicle with a gun.

   ii. CS-1 told RAVON WALKER and VERNON WALKER that because there was a risk of a vehicle stop by law enforcement, the guns needed to be hidden.

6

     CS-1 instructed RAVON WALKER and VERNON WALKER to hand over their guns so that they could be hidden in the trunk of the CS Vehicle.

    iii. RAVON WALKER handed over a gun, later identified as a Smith & Wesson .357 caliber revolver. VERNON WALKER handed over a gun, later identified as a Taurus .40 caliber pistol. The guns were placed in CS-1's hat and placed in the trunk.

  e. Law enforcement agents observed CS-2 exit the CS Vehicle and place an item in the trunk of the CS Vehicle before reentering the CS Vehicle. Law enforcement agents then followed the CS Vehicle to the vicinity of 218th Street and Broadway in Manhattan, New York. There, other agents and I stopped the CS Vehicle in the vicinity of 218th Street and Broadway in Manhattan, New York, and arrested GRAVES, RAVON WALKER, and VERNON WALKER, who were all seated in the back seat of the CS Vehicle.

  f. A silver Smith & Wesson .357 caliber revolver Model 66, loaded with six .357 caliber bullets, and a Taurus .40 caliber pistol, loaded with eight .40 caliber bullets, were recovered from the trunk of the CS Vehicle.

  g. During the arrest of VERNON WALKER, law enforcement recovered four latex gloves from the front pocket of his jacket.

  h. During the arrest of GRAVES, law enforcement recovered a black ski mask, black gloves, and a gravity knife from his person.

7

WHEREFORE, I respectfully request that KAREEM GRAVES, a/k/a "Pook," RAVON WALKER, a/k/a "Ray," and VERNON WALKER, the defendants, be imprisoned or bailed, as the case may be.

_____
TASK FORCE OFFICER JOSEPH KING
DRUG ENFORCEMENT ADMINISTRATION

Sworn to before me this
7th day of February, 2018

_____ GABRIEL W GORENSTEIN
THE HONORABLE STEWART D. AARON
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK