UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
                                           :

UNITED STATES OF AMERICA      :

                                           :         18 Cr. 146 (JFK)

           - v. -             :

                                           :

KAREEM GRAVES, et al.        :

                                           :

           Defendants.        :

                                         :
------------------------------------------------------x

## OMNIBUS MEMORANDUM OF LAW OF THE UNITED STATES IN OPPOSIITON TO DEFENDANTS' PRETRIAL MOTIONS

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
Attorney for the United States
of America

CHRISTOPHER J. CLORE
ANDEN CHOW
Assistant United States Attorneys
    *Of Counsel*

# Contents

PRELIMINARY STATEMENT ......................................................................1

BACKGROUND ........................................................................................1

   I.   The Investigation ..............................................................................1

   II.  The Indictment ................................................................................4

ARGUMENT .............................................................................................4

   III.   The Court Should Deny Defendant the Moving Defendants' Motion to Dismiss Count Three of the Indictment as Moot...................................4

      A.  Applicable Law ...........................................................................4

      B.  Discussion..................................................................................4

   IV.   The Moving Defendants' Various Requests for Extraordinary Disclosure and Other Relief Should be Denied .......................................................6

      A.  Identity of Confidential Informants................................................6

      B.  Brady/Giglio/404(b) Materials ...................................................9

CONCLUSION ........................................................................................12

## PRELIMINARY STATEMENT

The Government respectfully submits this omnibus memorandum of law in response to the pretrial motions of defendants Kareem Graves, a/k/a "Pook," Ravon Walker, a/k/a "Ray," and Vernon Walker (collectively, the "Moving Defendants"). The Moving Defendants – either substantively through their respective motions or by incorporating by reference the motion papers of another Moving Defendant – seek an order dismissing, pursuant to Fed. R. Crim. P. 12(b)(3)(B), Count Three of the indictment filed on February 21, 2018, which charged the Moving Defendants with firearms possession, in violation of Title 18, United States Code, Section 924(c), on the grounds that it fails to state an offense. Additionally, defendants Ravon Walker and Kareem Graves filed motions seeking miscellaneous relief related to discovery.

For the following reasons, the Court should deny the Moving Defendants' motions.

## BACKGROUND

I.   The Investigation

This case stems from a Drug Enforcement Administration ("DEA") investigation concerning a conspiracy to rob a purported heroin trafficker. Over the course of the investigation, law enforcement worked with two paid confidential Sources ("CS-1" and "CS-2," together, the "Confidential Sources"). On or about January 10, 2018, the Confidential Sources had a meeting with Graves and Ravon Walker near 167th Street and Sheridan Avenue in the Bronx, New York. (*See* Complt. ¶ 8(a).) During the meeting, the Confidential Sources informed Graves and Ravon Walker that they knew an individual ("Individual-1") who transported narcotics from Texas to New York on behalf of Mexican drug dealers. (*Id*.) The Confidential Sources offered to tell Graves and Ravon Walker about the next delivery so that they could rob it. (*Id*.) The Confidential Sources also told Graves and Ravon Walker that the next delivery would contain between approximately

10 and 15 kilograms of heroin. Graves and Ravon Walker informed the Confidential Sources that they wanted to meet again to discuss the robbery further. (*Id*.)

On or about January 24, 2018, the Confidential Sources had a second meeting with Graves and Ravon Walker in the vicinity of 166th Street and Sheridan Avenue in the Bronx. (*Id*. ¶ 8(b).) During this meeting, Graves and Ravon Walker informed the Confidential Sources that they, and a third individual (Vernon Walker), were prepared to carry out the robbery. (*Id*.) Graves and Ravon Walker explained that they would bring guns to commit the robbery. (*Id*.) The Confidential Sources then introduced Graves and Ravon Walker to another confidential sources ("CS-3") purporting to be Individual-1. (*Id*.) CS-3 told Graves and Ravon Walker that CS-3 was the driver for the individuals from Mexico involved in the transportation of narcotics. (*Id*.) Graves and Ravon Walker also inquired about the destination of the drugs so that they could check out the area. (*Id*.)

On or about February 1, 2018, the Confidential Sources and CS-3 met with Graves and Ravon Walker near 165th Street and Sherman Avenue in the Bronx during which CS-3 informed Graves and Ravon Walker that the next narcotics delivery was scheduled for February 6, 2018. (*Id*. ¶ 8(c).) CS-3 provided a description of the individuals who would accompany CS-3 during the delivery. (*Id*.) On or about February 5, 2018, the Confidential Sources met with Graves and Ravon Walker and the group drove together in a car driven by CS-1 (the "Vehicle") to the vicinity of 218th Street and Broadway to check out the location where the robbery was supposed to take place. (*Id*. ¶ 8(d).)

On or about February 6, 2018 at approximately 5:00 p.m., law enforcement officers observed the Confidential Sources drive to Third Avenue and Tremont Avenue in the Bronx. (*Id*. ¶ 9(b).) There, Graves entered the Vehicle. (*Id*.) They then drove to the vicinity of 165th Street and Sherman Avenue. (*Id*. ¶ 9(c).) Graves exited the Vehicle and met with four individuals on the

2

sidewalk, including Ravon Walker and Vernon Walker. (*Id.* ¶ 9(c).) Graves, Ravon Walker, and Vernon Walker then entered the backseat of the Vehicle. (*Id.*) Inside, Ravon Walker explained to the Confidential Sources that the individual who was supposed to drive them to the robbery was unavailable and asked if they could use the Vehicle instead. (*Id.* ¶ 9(c)(i).) The Confidential Sources agreed. (*Id.*) Graves then told the Confidential Sources that he, Ravon Walker, and Vernon Walker would go and get their guns. (*Id.*)

Law enforcement observed the Moving Defendants exit the Vehicle and enter 1060 Sherman Avenue. (*Id.* ¶ 9(d).) Several minutes later, the Moving Defendants exited the building and got back into the backseat of the Vehicle. (*Id.*) Ravon and Vernon Walker entered the Vehicle with guns. CS-1 instructed Ravon and Vernon Walker to hide the firearms in the Vehicle's trunk so that law enforcement would not see them if the Vehicle was stopped by law enforcement. (*Id.* ¶ 9(d)(ii).) Ravon Walker gave CS-1 a Smith & Wesson .357 caliber revolver (the "Smith & Wesson") and Vernon Walker gave CS-1 a Taurus .40 caliber semi-automatic pistol (the "Taurus," and, together with the Smith and Wesson, the "Firearms"). (*Id.* ¶ 9(d)(iii).) CS-1 placed the Firearms in a hat and placed the hat in the trunk of the Vehicle. (*Id.* ¶ 9(e).) Law enforcement agents then followed the Vehicle to the vicinity of 218th Street and Broadway in Manhattan, New York and arrested the Moving Defendants, all of whom were seated in the backseat of the Vehicle when they were apprehended. (*Id.*)

During the arrest, law enforcement officers recovered (i) the Smith & Wesson, which was loaded with six .357 caliber bullets, (ii) the Taurus, which was loaded with eight .40 caliber bullets, (iii) four latex gloves from the front pocket of Vernon Walker's jacket; and (iv) a black ski mask, black gloves, and a gravity knife from Graves' person. (*Id.* ¶ 9(h).)

II.     The Indictment

On or about February 21, 2018, the indictment captioned *United States v. Kareem Graves, et al.*, 18 Cr. 146 (JFK) (the "Indictment") was filed in this District. The Indictment charged the Moving Defendants with (i) participating in a conspiracy to commit Hobbs Act robbery, in violation of Title 18, United States Code, Section 1951; (ii) participating in a conspiracy to distribute narcotics, in violation of Title 21, United States Code, Section 846; and (iii) possessing firearms during and in relation to the Hobbs Act robbery charged in Count One and the narcotics conspiracy charged in Count Two, in violation of Title 18, United States Code, Section 924(c)

**ARGUMENT**

III.    The Court Should Deny Defendant the Moving Defendants' Motion to Dismiss Count
        Three of the Indictment as Moot

        *A.      Applicable Law*

Title 18, United States Code, Section 924(c)(1)(A) makes it unlawful for "any person who, during and in relation to any crime of violence ***or drug trafficking crime*** . . . for which the person may be prosecuted in a court of the United States" to "use[] or carr[y] a firearm . . . in furtherance of any such crime." 18 U.S.C. § 924(c)(1)(A) (emphasis added). Section 924(c)(3) defines a crime of violence as an offense that is a felony and "has as an element the use, attempted use, or threatened use of physical force against the person or property of another," 18 U.S.C. § 924(c)(3)(A) (the "elements/force clause"), or "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," 18 U.S.C. § 924(c)(3)(B) (the "residual clause").

        *B.      Discussion*

Here, the Moving Defendants request that the Court dismiss Count Three of the Indictment, which charges firearms possession in violation of Title 18, United States Code, Section 924(c)(1)(A), because the charge is linked to the Hobbs Act robbery conspiracy charged in Count

One of the Indictment. More specifically, the Moving Defendants argue that the robbery conspiracy does not qualify as a crime of violence (i) under the elements/force clause because "Hobbs Act robbery can be committed using less than the 'violent force' required to constitute force under this clause"; or (ii) under the residual clause because the residual clause is unconstitutionally vague. (R. Walker Mot. 3.)

On April 17, 2018, the Supreme Court decided *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), which held that 18 U.S.C. § 16(b) is unconstitutionally vague. Though *Dimaya* did not directly address the constitutionality of any provision of Section 924(c), Section 16(b) contains identical language to one of the two definitions of a "crime of violence" under Section 924(c)(3), specifically, Section 924(c)(3)(B)'s "residual clause."

*Dimaya's* impact on Section 924(c)(3)(B) is now at issue in a case pending before the Second Circuit, *United States v. Barrett*, 14-2641-cr. The issue in *Barrett*, like here, is whether Hobbs Act robbery conspiracy constitutes a crime of violence under either of Section 924(c)(3)'s subsections. On April 23, 2018, the panel assigned to consider *Barrett* granted the Government's request to submit a supplemental brief addressing whether *Dimaya's* analysis of Section 16(b)— and, in particular, its application of the so-called "categorical approach"—applies to Section 924(c)(3)(B)'s residual clause. On May 4, 2018, the Government submitted its supplemental brief in *Barrett*.

The pendency of the Second Circuit's determination in *Barrett*, which will affect the merits of the Moving Defendants' claim, weighs in favor of reserving a determination by this Court with respect to whether Hobbs Act robbery qualifies as a crime of violence pending the Second Circuit's decision in *Barrett*.

That said, this Court need not address whether Hobbs Act robbery qualifies as a crime of violence because Count Three of the Indictment is also linked to the narcotics conspiracy charged in Count Two. Indeed, even if it were true—that Hobbs Act robbery does not qualify as a crime of violence under the elements/force clause and because the residual clause is unconstitutionally vague—Section 924(c) still prohibits the use, carrying, or possession of a firearm during or in relation to a "drug trafficking crime." Neither *Dimaya* nor *United States v. Hill*, 890 F.3d 51 (2d Cir. 2018), have any bearing on that provision.

Accordingly, the Moving Defendants' motion to dismiss Count Three of the Indictment is moot and, thus, should be denied.

## IV.   The Moving Defendants' Various Requests for Extraordinary Disclosure and Other Relief Should be Denied

### A.   *Identity of Confidential Informants*

The Moving Defendants seek discovery of information regarding the identity of the Government's confidential informants. The Moving Defendants, however, have failed to make the requisite showing for such disclosure and, thus, the motion should be denied.

Courts have long recognized the Government's privilege to withhold an informant's identity. *See, e.g., Roviaro v. United States*, 353 U.S. 53, 59 (1957) (citing cases). Disclosure of the identity of a confidential informant is an "extraordinary remedy." *United States v. Muvet*, 945 F. Supp. 586, 602 (S.D.N.Y. 1996) (quoting *Ortega v. United States*, 897 F. Supp. 771, 780 (S.D.N.Y. 1995)). The defendant bears the burden of showing the need for disclosure of an informant's identity and to do so must establish that, absent such disclosure, the defendant will be deprived of the right to a fair trial. *United States v. Fields*, 113 F.3d 313, 324 (2d Cir. 1997) (citing *Roviaro v. United States*, 353 U.S. at 60-61). "[D]isclosure of the identity or address of a confidential informant is not required unless the informant's testimony is shown to be material to

the defense." *United States v. Saa*, 859 F.2d 1067, 1073 (2d Cir. 1988); *see also, United States v. Russotti*, 746 F.2d 945, 949-50 (2d Cir. 1984) ("It has been consistently held that an informant's identity need not be disclosed unless essential to the defense.") There are sound policy reasons behind this legal standard. Maintaining the confidentiality of an informant's identity furthers and protects "the public interest in effective law enforcement." *Roviaro*, 353 U.S. at 59.

To demonstrate materiality, a defendant must do more than merely show that the informant was a participant in and witness to the crime charged. *Saa*, 859 F.2d at 1073 (citing *United States v. Jimenez*, 789 F.2d 167 (2d Cir. 1986)). Nor can a defendant meet his burden by speculating on the Government's case against the defendant, or the informant's role therein. *See United States v. Fields*, 113 F.3d at 324 ("Speculation that disclosure of the informant's identity will be of assistance is not sufficient to meet the defendant's burden."). Rather, the defendant must make an affirmative showing that the "disclosure of an informant's identity . . . is relevant and helpful to the defense of an accused, or is essential to the fair determination of a cause," *Saa*, 859 F.2d at 1073 (internal quotation marks omitted), and that, accordingly, the need for disclosure of an informant's identity outweighs the Government's interest in anonymity, *see United States v. Shamsideen*, 03 Cr. 1313 (SCR), 2004 WL 1179305, at *11 (S.D.N.Y. Mar. 31, 2004) (citing *United States v. Jimenez*, 789 F.2d at 170 (disclosure not warranted where defendant produced no evidence that informant's testimony "would have been of even marginal value to the defendant's case").

Here, the Moving Defendants fail entirely to make the required showing. The case law is clear that the fact that an informant was a participant in and witness to the crime charged is insufficient to demonstrate that his testimony is material to the defense and, thus, does not warrant disclosure of the informant's identity. Recognizing this, the Moving Defendants go one step farther

and argue that "[v]irtually all the evidence as to what [the Moving Defendants] did or did not agree to and/or whether [they were] entrapped will come from the testimony of the informants and the strength of the evidence will depend on the informants' credibility." (Graves Mot. 5.) That is incorrect. In fact, each of the meetings between the informants and the Moving Defendants described in the underlying complaint were recorded and provided to the Moving Defendants in discovery (as were recorded telephone conversations between the informants and the Moving Defendants).[1] Accordingly, to the extent that the Moving Defendants intend to raise a defense (entrapment or otherwise), they have at their disposal recordings of their conversations with the informants.

Crucially, even if the informants' testimony comprised the bulk of the Governments' evidence at trial, the Moving Defendants do not – indeed, cannot – explain how that testimony is material to an entrapment defense.

In *United States v. Saa*, the defendant explained that the informant in question could "shed light on an apparent contradiction in the testimony as to whether she was present" for a narcotics transaction. 859 F.2d at 1073-74. One of the government's witnesses in that case testified that the defendant was present for the transaction, while another did not. *Id.* at 1074. Accordingly, had the informant testified that the defendant was not present for the transaction, the "testimony would have been material to [the defendant's] defense." *Id.* (noting that while the defendant "cannot establish that [the informant] would have testified in this manner . . . it suffices that she is able to

---

[1] Graves argues that the "sound quality is generally poor and much of what the participants say is inaudible." (Graves Mot. 3.) The Government disagrees. And, in any event, the fact that the sound quality may not be up to Graves' standards does not mean that the evidence doesn't exist, such that "[v]irtually all" of the Government's evidence will be introduced through the confidential informants.

point to 'the events to which [the informant] might testify, and the relevance of those events to the crime charged") (citations omitted).

Here, by contrast, the Moving Defendants merely assert without any explanation that "[s]hould [they] raise a defense of entrapment, the identity of the informants would be uniquely critical because the initial encounters at which the fake potential robbery was presented to [the Moving Defendants] were not recorded." (Graves Mot. 6.) The Moving Defendants do not, however, present *any* connection between the confidential informants and a viable entrapment defense, let alone point to particular events about which the informants might testify that would be material to the defense. Accordingly, the Moving Defendants' request for disclosure of the confidential informants' identities should be denied.[2]

        B.     *Brady/Giglio/404(b) Materials*

The Moving Defendants also seek orders requiring the disclosure of *Brady* and *Giglio* materials and prior bad acts. Such orders are unnecessary. With respect to *Brady*, the Government recognizes its obligations. Should the Government become aware of any *Brady* material, it will promptly produce it. As a result, the Moving Defendants' request for an order pertaining to the disclosure of *Brady* material should be denied, consistent with the well-established practice in this District in such circumstances. *See, e.g., United States v. Gallo*, No. 98 Cr. 338 (JGK), 1999 WL 9848, at *8 (S.D.N.Y. Jan. 11, 1999) (denying defendant's motion to compel production of *Brady* material based on Government's representations that "it is aware of its obligations under *Brady* . . . and will produce any *Brady* material to the defense well before trial"); *United States v. Yu*, No. 97 Cr. 102 (SJ), 1998 WL 57079, at *4-5 (E.D.N.Y. Feb. 5, 1998) (denying the defense request

---

[2] That said, in the event that the Government intends to call the Confidential Sources as witnesses at trial, the Government will furnish to the Moving Defendants impeachment materials on a date set by the Court in advance of trial.

that Government provide early disclosure of *Brady* material because Government acknowledged its continued obligation to produce exculpatory material upon its discovery and assured that it would comply with that obligation); *United States v. Perez*, 940 F. Supp. 540, 553 (S.D.N.Y. 1996) (same).

With respect to *Giglio*, the Government is likewise aware of its obligations and expects to provide all such material concerning its witnesses on a date that will be set by the Court of such disclosures in advance of trial. *See, e.g., United States v. Trippe*, 171 F. Supp. 2d at 238 (S.D.N.Y. 2001) ("The usual practice in this district is that the Government agrees to make impeachment information available to the defense at the same time as Jencks Act material, that is, at least one day before the Government witness is called to testify."); *United States v. Rueb*, No. 00 Cr. 91 (RWS), 2001 WL 96177, at *6-7 (S.D.N.Y. Feb. 5, 2001) (Government directed to provide *Giglio* material at least one day before calling the relevant witness to testify). As the cases recognize, such disclosure allows defense counsel adequate time to prepare for cross-examination of Government witnesses as they are called to testify. The Second Circuit has rejected the idea that impeachment material of potential trial witnesses should be disclosed when defendants make a demand for it. *See United States v. Coppa*, 267 F.3d 132, 146 (2d Cir. 2001). Such a timetable would pose practical and prudential difficulties, in any event, because the Government has not yet fully determined which witnesses it will call at trial or at an applicable hearing, and because disclosures far in advance of trial of identifying information concerning potential witnesses would pose safety concerns.

Finally, with respect to evidence of other crimes, wrongs, or bad acts under Federal Rule of Evidence 404(b), the rule simply requires that the Government provide reasonable notice in advance of trial, or during trial, if the court excuses pretrial notice on good cause shown. Fed. R.

Evid. 404(b)(2). Less than four weeks' notice has routinely been held to be adequate under the notice provision of Rule 404(b). *See United States v. Valenti*, 60 F.3d 941, 945 (2d Cir. 1995) (in embezzlement case, four days' notice of evidence of prior wire transfers showing defendant's knowledge was sufficient notice of other acts evidence under Rule 404(b)); *United States v. Triana-Mateus*, No. 98 Cr. 958 (SWK), 2002 WL 562649, at *6 (S.D.N.Y. Apr. 15, 2002) (directing Government to provide 404(b) notice two weeks before trial). Requiring substantially more than four weeks' notice would be inappropriate, however, because the "evidence that the [G]overnment wishes to offer may well change as the proof and possible defenses crystallize." *See United States v. Matos-Peralta*, 691 F. Supp. 780, 791 (S.D.N.Y. 1988). In this regard, the Second Circuit has approved disclosure of Rule 404(b) evidence as late as four days before, and even during, trial depending on the circumstances of the particular case. *See Valenti*, 60 F.3d at 945. The Court has not yet set a date for any motions *in limine* for a trial in this case. The Government will comply with any future date set by the Court in advance of trial. Accordingly, the motion should be denied.

## <u>CONCLUSION</u>

For the foregoing reasons, the Motion should be denied.

Dated:          New York, New York
                August 24, 2018

                                        Respectfully submitted,

                                        GEOFFREY S. BERMAN
                                        United States Attorney for the
                                        Southern District of New York


                              By:       /s/ Christopher J. Clore
                                        Christopher J. Clore
                                        Anden F. Chow
                                        Assistant United States Attorneys
                                        (212) 637-1063 / 2348