April 8, 2019

Honorable John F. Keenan
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007
Courtroom 20-C

Re: <u>United States v. Vernon Walker</u>
18 Cr. 146 (JFK)

Dear Judge Keenan,

      Pursuant to Rule 32 of the Federal Rules of Criminal Procedure, this letter and accompanying exhibits are submitted in support of a request for the Court to vary from the Guidelines and impose a non-guidelines sentence, in the 60 month range, which counsel realizes is substantially lower than the guideline sentence recommended, by Probation, or as lenient a sentence, as to this Court, deems just and right.

      Although Vernon Walker accepts responsibility for his actions in this case, counsel submits and urges that a sentence of 151 months, for Vernon's last minute participation would be unduly harsh, since it would mean that the *least* involved participant in the crime would receive a sentence approximately 4-5 times as severe as the sentences imposed on his co-defendants (who initiated the wrongdoing, were involved in its planning & execution and enlisted Vernon on the final day).

      Vernon's Guideline Range is driven, and the resultant recommendation is unduly increased and weighted, not by his role in the crime, but by his Career Criminal designation. It increases both his Guideline level by 6 points & his Criminal History from CH V to CH VI, increasing his Advisory Guideline Range from 84 – 105 months to 151 to 188 months. In this case, the resultant Guideline Range, if followed, would unjustly punish more severely the person who had the *least* involvement. This seems wrong and

if the goal is a reasonable sentence, it is submitted that this sentence would not be reasonable. This is especially true, given the facts, personal history, and circumstances that led Vernon to become involved in this crime.

A sentence somewhat greater (because of Vernon's Criminal History) but in line with the sentences imposed on his codefendants, Kareem Graves, sentenced to 42 months on January 8, 2019, and Ravon Walker, Vernon's cousin, sentenced to 36 months on February 11, 2019 would be more just and equitable, considering all the factors.

Vernon Walker is scheduled for sentencing, before Your Honor, on April 17, 2019, at 11:00 A.M.

## SENTENCING DISPARITY AMONGST THE DEFENDANTS

In this case, it is important to note, Vernon was recruited into the Hobbs Act Conspiracy literally at the last moment on February 6, 2017, the day the defendants were arrested. He was asked to participate by his cousin, Ravon Walker, and Kareem Graves that same day. As the Court will learn, through the mitigation report (Psychological Evaluation) attached as Exhibit A, and the tests administered by Dr. Owen, Ph.D., Director, Queens FPECC Correctional Health Services, Adjunct Associate /Full Professor, Columbia & St. John's University, Clinical Psychology, an overwhelming part of his psyche is his concern for family (Exhibit A, p. 5, Adverse Childhood Experience, and p. 7, Summary and Conclusion: " … rather his intent was to look after his cousin without thought to his own safety or well-being." When his cousin, Ravon, told him what he was going to do, and that he needed his help, he agreed. (Exhibit A, "When called on by his cousin at the last minute, he perceived his cousin would not be safe and his instincts to protect his cousin kicked in."

Approximately a month before this, at a time when they were both very vulnerable and susceptible to temptation, Ravon and Kareem Graves were enticed into a law enforcement staged robbery scheme by a "friend" of Kareem Graves. This "friend" was a Confidential Informant. For approximately a month Ravon & Kareem met on a number of occasions with CIs and discussed and planned this "robbery." The investigation indicates Vernon was not involved in any of the planning. His participation is restricted to the day of the arrest (PSR, The Offense Conduct, p.5 & 6, ¶s 12-19). Probation assumes that Vernon's motive to participate appeared to be monetary gain (PSR, p.25), however, as noted in Vernon Walker's Psychological Evaluation (Exhibit A) His motivation to become involved goes much deeper than monetary gain.

As Dr. Owen reports from interviews with family members of Vernon & Ravon (Exhibit A, p.2): " One cousin spoke of Vernon's past difficulty with substances and the law but stated 'this (current legal) situation is sad because he wasn't the (instigator). It makes it even more disturbing and hurtful.' " This sentiment is shared, "more than one family member is 'beating themselves up' for the situation he (Vernon) is in now.' "

[Type text]

The Court should also understand the closeness that existed between Ravon & Vernon. As noted in the PSR, p. 19, ¶ 81, he worked for Ravon, the founder and member of "Afrobats, Incorporated" an acrobatic dance and comedy troupe. Vernon sometimes danced in shows, but primarily was the one who carried and set up the equipment. It was described in a letter to the Court from Vernon's youngest sister, Lakesha Walker, attached as Exhibit B, collectively with letters from other family members: his eldest sister, Doretha Walker, his aunt, Nicola Lee Shepperson, and his mother, Linda Ann Walker (together these letters reflect the horrendous physical & psychological abuse Vernon suffered at the hands of his father who himself abused drugs and alcohol and was violent to Vernon and his mother). In her stream of consciousness letter, his youngest sister reflects on the relationship with Ravon: "he (Vernon) work with my cousin Ravon Walker help him out by having him Dancing and Central Park he made sure had some type of funds by going down town manhattan where my cousin and his friends,brother will dance and make honest cash dancing for people and give them a great show my brother use to control the music and go around and collect the donates in a hat people will give cash and enjoy the show…" She continues giving examples of Vernon's closeness and protectiveness exhibited to his family, his "primary support group" (as defined by Dr. Owen, Exhibit A, p.7 ) nieces, nephews, siblings and mother, and in a particular revealing insightful episode into the man Vernon Walker is. At p. 6 of her letter, the last paragraph:

> " I ask that you can understand and feel where I am coming from my dad die in 1999 of hiv Aids and again my brother never had a chance to really say how he felt my dad also been in and out of the jail system they bump into each other when my father was sick where he was diagnosed with Aids but Vernon just make sure my father was OK evening though he had his feeling and reason for his behavior was cause of him but that was still his dad so he protected him and was there for him at that time and moment." (Exhibit B, p.6 of Lakesha's letter)

Finally, in a heartfelt letter of gratitude expressed by Kareem Graves (Exhibit C), to the Court, for not only the sentence imposed in his case and the case of Ravon Walker, Kareem pleads for Vernon. "…on the 10th of April you will have the last of the 3 of us to sentence, Vernon Walker which will conclude and wrap our case up to the end of our chapter. Your Honor as you know I was sentenced in front of you to 42 months respectfully and Ravon was sentenced to 36 months also respectfully, before you sentence Vernon Your Honor I just want the Court to know that Ravon and his cousin Vernon would never be here if it wasn't for me and the fact that it was my situation in life and the fact that me and my family was in a after my shooting incident…neither one of them needed to be involved especially Vernon since he spent so much time in jail in the past, but he was finally on a good path raising his son with a good woman who loves him and I want the best for him, and his cousin Ravon …"

## THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT

## PSYCHOLOGICAL EVALUATION

### "SO MUCH PAIN"        "SO MANY TEARS"

It is hard to script a more horrendous upbringing than that endured by Vernon Walker. On his right arm he has a tattoo, the phrase "so much pain" and on his left arm, the phrase "so many tears."

As a child, he was physically and emotionally abused by his father, who was addicted to crack and alcohol. Probation notes that a younger cousin witnessed the father throw the mother down the stairs. He ran away from home three times, Social Services was called but failed to protect him, because in spite of the father's abuse, Vernon's mother protected the father. He ate paint chips as a child, was tested, and found to have lead poisoning. When he was 8 or 9 years old he was beaten by his father to the point of loss of consciousness. At age 10 he was hit by a car and his father's reaction was to beat him for injuring his right leg (See PSR, p. 15, ¶s 56 & 57; Exhibit A, p.2 & 3, Bio-Psycho-Social History).

In Doretha Walker's letter (Vernon's older sister), Exhibit B, "My brother had a rough upbringing seeing as my father was very abusive towards my brother and mother. I feel so ashamed about writing this letter to you; my father did things that were not supposed to happen to a child at that age beating that left him bruised up and scares for a lifetime. Back in the days, you could not tell anyone what was going on in your household unless you are prepared to get a beating again. I saw my brother get beat with extension cords among other things…"

At age 11, his mother moved to a shelter for battered women. Not surprisingly he acted out and was sent to group homes where he was physically and sexually abused. During the years, he went in and out of various group homes, foster care and state penal institutions. He has an indentation on his left temporal lobe from being hit with a baseball bat while in a group home (Exhibit A, p. 2, 3).

Walker revealed to Probation that while incarcerated at Attica he was raped by a Corrections Officer which led to an infection which required two operations on his anus. He was threatened to remain silent. It was unnecessary, since Vernon felt such shame about the rapes, he denied them, even to the surgeon who operated on him. As Dr. Owen notes, …"While his childhood trauma was bad enough, the rape as an adult was worse, 'because my manhood was taken,' (Exhibit A, p. 3).Vernon believes the officer who raped him was eventually arrested and prosecuted in connection with assaults on other inmates. Counsel subpoenaed the medical records and they were reviewed by Dr. Owen, who confirms, "Medical records confirm that on 5/23/08 he has surgery under general anesthesia for 'extensive anal and intraanal condyloma,' a condition frequently associated

with anal rape. Surgery is a treatment only for the most severe cases and even then is usually performed on an outpatient basis. Mr. Walker required a 4 day hospitalization."

Dr. Owen uncovered that not only does Vernon acknowledge a history of substance abuse, but he has tried on 2-3 occasions to commit suicide through overdosing on "crack and dope," (Exhibit A, p.3)

Yet, in spite of all he has endured, he is committed to change, is optimistic and affable. (Counsel understands Vernon sent his letter directly to Your Honor). He wants to be a part of his son's life when he finishes his punishment for this crime. He is truly remorseful that he got involved, but at the time, thought he could not let Ravon down, when he asked for his help. As previously indicated, in her mitigation analysis, the Psychological Evaluation, this sense of responsibility was consistent with her findings. Dr. Owen opines that Vernon had a strong sense of responsibility to protect his family "in any way possible."

He is taking positive steps while in MCC to correct his life. He was on the waiting list to take the GED exam, took it, (status unknown), and was also on the list for several self-help and personal improvement programs, including Step by Step, Focus Forward and Lead by Example. Attached as Exhibit D, is a printout of some of the completed programs, which includes Step by Step, while the others are in progress. Since his federal incarceration on February 7, 2018, he has not had any disciplinary infractions.

Dr. Owen concludes that there were many times in his life that Vernon's trajectory could have been changed. She indicates that he exhibits sufficient criteria for a diagnosis for PTSD (Exhibit A, p.5). That his early exposure to lead poisoning significantly negatively affected his neural development, resulting in long-lasting neuropsychological and emotional impairments. It would have caused or at least aggravated his Attention Deficit/Hyperactivity Disorder, which like everything else was never addressed or treated. The role of trauma in his life was never addressed. She is certain that mental health treatment now, could make a difference in his current, and future functioning, and help him obtain the goal of a meaningful healthy relationship with his son.

## CONCLUSION

In weighing counsel's request for leniency, the Court should consider the facts and circumstances of Vernon Walker's life. Counsel submits, they contributed and played a part in his making the wrong decision i.e. joining the scheme resulting in his being before Your Honor, for sentencing.

In that regard, counsel suggests a sentence in the 60 month range which would be greater than that of his co-defendants, thereby crediting his criminal history, yet more equitable and reasonable, given the circumstances of this case, and defendant, and would be "sufficient, but not greater than necessary, to comply with the purposes set forth in" that statute, 18 U.S.C. §3553(a).

It is urged that an analysis of the foregoing factors, when considered together with Vernon's history & characteristics, his resolve and determination to change his life, the effectiveness of the Federal system, both while he is incarcerated but in particular the Department of Probation's ability, when he is on supervised release to provide the rehabilitative tools necessary in that regard, when joined with the need to avoid unwarranted sentencing disparity, will encourage the Court to show some degree of leniency to Vernon Walker.

Wherefore, it is urged, that the Court under the circumstances, fashion a sentence in the 60 month range, or as close to that period as this Court deems just and right, as "sufficient, but not greater than necessary."

Respectfully submitted,

Gerald J. Di Chiara