```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
UNITED STATES OF AMERICA              :
                                      :
     -against-                        :    No. 18 Cr. 146 (JFK)
                                      :
VERNON WALKER,                        :    OPINION & ORDER
                                      :
                     Defendant.       :
--------------------------------------X
```

┌─────────────────────────────┐
│ USDC SDNY                   │
│ DOCUMENT                    │
│ ELECTRONICALLY FILED        │
│ DOC #: _____    │
│ DATE FILED: 03/25/2021      │
└─────────────────────────────┘

APPEARANCES

FOR DEFENDANT VERNON WALKER:
    Pro Se

FOR THE UNITED STATES OF AMERICA:
    Anden Chow
    Christopher Clore
    U.S. ATTORNEY'S OFFICE FOR THE SOUTHERN DISTRICT OF NEW YORK

**JOHN F. KEENAN, United States District Judge:**

Before the Court is a pro se motion by Defendant Vernon Walker seeking a sentence reduction due to Walker's age (he is 48), preexisting medical conditions (primarily asthma, latent tuberculosis, and prediabetes), and the deadly pandemic caused by the coronavirus, COVID-19. Walker brings the motion pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A), commonly known as the compassionate release statute. The Government opposes Walker's motion as substantively meritless because Walker's medical conditions, the circumstances of his incarceration, and the 18 U.S.C. § 3553(a) sentencing factors do not warrant a reduction in sentence. For the reasons set forth below, Walker's motion is DENIED.

1

**I. Background**

Unless otherwise noted, the following is taken from the materials the parties submitted, Walker's Presentence Investigation Report, dated December 21, 2018, ("PSR", ECF No. 69), and the transcripts of Walker's October 3, 2018 plea ("Plea Tr.", ECF No. 58) and April 17, 2019 sentencing ("Sent. Tr.", ECF No. 93). In ruling on Walker's request, the Court has considered the arguments advanced in his pro se motion (filed under seal) and the Government's letter in opposition (ECF No. 103). Walker did not file a reply.

On October 3, 2018, Walker pleaded guilty, pursuant to a plea agreement, to one count of conspiracy to commit Hobbs Act Robbery, in violation of 18 U.S.C. § 1951. (PSR ¶¶ 2, 6.) The charges stemmed from Walker's participation in a scheme to rob an individual whom Walker's co-conspirators were told—by confidential sources ("the CSs") working with the Drug Enforcement Administration—would be transporting a significant quantity of heroin from Texas to New York. (Id. ¶¶ 12-16.) On February 6, 2018, Walker and his co-conspirators met with the CSs, retrieved guns from a nearby building, and drove with the CSs to the area where they planned to conduct the robbery. (Id. ¶¶ 16-18.) When Walker and the others arrived, however, he and his co-defendants were placed under arrest. (Id. ¶ 19.) A search of the trunk of their vehicle yielded two loaded

2

firearms, including a Taurus .40 caliber pistol with eight .40 caliber bullets which Walker had given to one of the CSs for hiding in case their vehicle was stopped by law enforcement. (Id. ¶¶ 18-19.)  During the arrest, law enforcement officers also recovered four latex gloves from the front pocket of Walker's jacket, as well as a black ski mask, black gloves, and a gravity knife from one of Walker's co-conspirators.  (Id. ¶ 19.)  During his plea allocution before Judge Preska, Walker admitted to agreeing with others to commit the armed robbery and he knew it was unlawful.  (Plea Tr. at 13:11-14:9.)

On April 17, 2019, Walker appeared for sentencing before this Court, during which the Court noted Walker's "serious, violent, earlier record," and that "[t]his [wa]s his ninth overall conviction and his fourth involving a crime of robbery." (Sent. Tr. at 16:8-11.)  The Court also noted Walker's extraordinarily traumatic childhood, which involved extensive beatings by Walker's late father, including an incident when Walker "was hit by a car and his father, instead of commiserating with him and trying to relieve his [ai]ls, the father beat him because he got hit by the car."  (Id. at 16:8-20.)  The Court further recounted a horrific series of assaults Walker had endured by a New York State corrections officer while Walker was serving time in a state prison for an earlier state conviction.  (Id. at 16:21-17:14.)

3

The Court found a Guideline offense level of 29 and a Criminal History Category of VI. (Id. at 17:23-18:3.) "That means the scope under the Guidelines is enormously high, it is 12 years and seven months, which is 151 months to 188 months." (Id.) Nevertheless, the Court explained that it was "going to vary significantly from the Guidelines [and the terms of Walker's plea agreement] because of [Walker's] awful childhood" and because "society has to apologize to him . . . for the things [that] happened to him" while he was serving his earlier state sentence. (Id. at 18:4-13.) Accordingly, the Court sentenced Walker to 108 months' incarceration, reflecting a 43-month downward variance, to be followed by a three-year term of supervised release. (Id. at 18:14-25; 20:1-6.) To date, Walker has served approximately 38 months of his sentence. He is scheduled for release on January 26, 2026. See Find an Inmate, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Mar. 24, 2021).

On January 5, 2021, the Court received a pro se motion from Walker requesting a reduction in sentence and his immediate compassionate release due to the COVID-19 pandemic. Walker's motion explained that he suffered from certain health issues—namely, asthma, latent tuberculosis, prediabetes, and post-traumatic stress disorder—and he was deeply worried about his well-being should he contract the coronavirus. The Court

4

ordered the Government to respond and gave Walker 30 days from the date on which he was served with the Government's opposition to file a reply, if any. (ECF No. 102.) On January 25, 2021, the Government opposed Walker's request on the grounds that no extraordinary and compelling reasons support his release which, in any event, would be inappropriate under the sentencing factors set forth in 18 U.S.C. § 3553(a). (ECF No. 103.) Walker did not file a reply.

## II. Discussion

### A. Legal Standard

18 U.S.C. § 3582(c)(1)(A) allows a court to modify a term of imprisonment "upon motion of the defendant" provided the defendant has exhausted certain administrative requirements. 18 U.S.C. § 3582(c)(1)(A). Under these circumstances, a court may reduce the defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Id. § 3582(c)(1)(A)(i). In doing so, the Court must also consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." Id. § 3582(c)(1)(A). "Application of the § 3553(a) factors requires an assessment of whether the relevant factors 'outweigh the "extraordinary and compelling reasons" warranting compassionate release . . . [and] whether compassionate release would

5

undermine the goals of the original sentence.'" United States v. Daugerdas, --- F. Supp. 3d ---, No. 09 Cr. 581 (WHP), 2020 WL 2097653, at *4 (S.D.N.Y. May 1, 2020) (alterations in original) (quoting United States v. Ebbers, 432 F. Supp. 3d 421, 430–31 (S.D.N.Y. 2020)).

In the Second Circuit, the policy statement issued by the U.S. Sentencing Commission pertaining to compassionate release, section 1B1.13 of the Sentencing Guidelines, "is not 'applicable' to compassionate release motions brought by defendants," and "cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling." United States v. Brooker, 976 F.3d 228, 236 (2d Cir. 2020). Accordingly, as the court in United States v. Harris, No. 15 Cr. 445 (PAE), 2020 WL 5801051 (S.D.N.Y. Sept. 29, 2020), explained:

> when assessing a motion brought directly by an imprisoned person rather than by the BOP, the Court is constrained neither by [§] 1B1.13's enumeration of extraordinary and compelling reasons, nor by its freestanding requirement that the defendant seeking release not pose any danger to the community. Rather, the Court may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." However, even if such reasons are present, the Court must also assure itself that release is consistent with "the factors set forth in section 3553(a) to the extent that they are applicable."

Id. at *2 (footnote and internal citations omitted).

6

"[P]ro se litigants generally are entitled to a liberal construction of their pleadings, which should be read 'to raise the strongest arguments that they suggest.'" Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)).

### B. Analysis

The Court is sympathetic to the heightened risk certain individuals face from COVID-19. See People at Increased Risk, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html (last visited Mar. 24, 2021); see also United States v. Park, 456 F. Supp. 3d 557, 560 (S.D.N.Y. 2020) ("The nature of prisons—crowded, with shared sleeping spaces and common areas, and often with limited access to medical assistance and hygienic products—put those incarcerated inside a facility with an outbreak at heightened risk.") (collecting sources). And, on at least one occasion, it has ruled that the threat posed by the COVID-19 pandemic to a medically "high-risk" individual constitutes "extraordinary and compelling reasons" to warrant immediate compassionate release. See United States v. Smith, 454 F. Supp. 3d 310, 315 (S.D.N.Y. 2020) (granting release to non-violent 62-year-old who suffered from asthma, high cholesterol, blood clots, a thyroid condition, and suspected multiple myeloma); but see United States v. Seshan,

7

No. 14 Cr. 620 (JFK), 2020 WL 2215458, at *4 (S.D.N.Y. May 6, 2020) (denying release to 47-year-old despite his "end-stage renal failure and hypertension" and the threat of COVID-19 because, inter alia, the defendant had a history of violence and granting the motion would disserve important § 3553(a) sentencing factors).

Nevertheless, after considering the 3553(a) factors in this case, the Court is not persuaded that extraordinary and compelling reasons exist to reduce Walker's sentence. Accordingly, Walker's motion must be denied. See 18 U.S.C. § 3582(c) (stating a court "may not modify a term of imprisonment once it has been imposed" without a finding that "extraordinary and compelling reasons warrant such a reduction").

First, Walker has failed to articulate a sufficiently extraordinary or compelling reason why his sentence should be modified.  The foundation of Walker's motion is the threat COVID-19 poses to incarcerated individuals with underlying medical conditions.  Indeed, according to the Centers for Disease Control and Prevention ("the CDC"), older adults and people of any age who have serious underlying medical conditions may be at higher risk for a severe illness from COVID-19. See People at Increased Risk, Ctrs. for Disease Control & Prevention, supra.  Here, however, Walker's age and health issues are not severe enough to warrant his immediate release.

8

Walker is 48, significantly younger than the CDC's former high-risk cutoff age of 65. See id.  And, while the CDC has listed moderate to severe asthma and diabetes as potential COVID-19 risk factors, Walker's medical conditions cannot be characterized as such.  "The current COVID-19 pandemic is an unprecedented worldwide catastrophe.  But it does not warrant the early release of sentenced inmates in federal prisons convicted of serious, dangerous offenses, like [the defendant], whose medical conditions and risk of contracting the virus cannot be deemed 'extraordinary and compelling.'" United States v. Mood, No. 19 Cr. 113 (VB), 2020 WL 3256333, at *1 (S.D.N.Y. June 16, 2020) (denying release to 53-year-old with diabetes, hypertension, and obesity where "[t]here is no question that [the defendant] has health issues, but his condition is stable and has been effectively managed by routine monitoring and medication").  Further, Walker does not suffer from other health conditions which rise to the level of COVID-19 risk factors looked to by the CDC and courts, such as cancer or immunocompromization. See, e.g., Park, 456 F. Supp. 3d at 563-64 (granting release to 44-year-old with a documented history of respiratory issues, including severe asthma and immune-compromising diseases); Smith, 454 F. Supp. 3d at 315; but see, e.g., United States v. Cajigas, No. 08 Cr. 391 (VM), 2020 WL 6625210, at *2 (S.D.N.Y. Nov. 11, 2020) (denying release to 50-

9

year-old with a body mass index of 35 because, inter alia, "in light of his age . . . and the fact that he presents no other health conditions, [the defendant's] obesity and pre-diabetes do not satisfy the extraordinary and compelling standard"); United States v. Mason, No. 96 Cr. 126 (JFK), 2021 WL 37576, at *3 (S.D.N.Y. Jan. 5, 2021) (same for 52-year-old with obesity and borderline hypertension and diabetes).

    Second, and decisive here, even if Walker's age, health risks, and the COVID-19 pandemic could provide extraordinary and compelling reasons for a sentence reduction, application of the 3553(a) factors cripples his request and outweighs any justification for early release.  Here, the factors that weigh in Walker's favor, such as the need to provide necessary medical care, are overshadowed by the combined force of "the nature and circumstances of the offense" and the need for the sentence imposed to "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense," "afford adequate deterrence to criminal conduct," and "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a).  For the same reasons that necessitated Walker's 108-month sentence, which are incorporated by reference here, the Court finds that modifying his term of incarceration would disserve the above important sentencing factors.  Accordingly, Walker's motion is denied. Cf. United States v. Graves, No. 18

Cr. 146 (JFK), 2020 WL 6058269, at *4 (S.D.N.Y. Oct. 14, 2020) (denying release to Walker's 43-year-old co-defendant who suffered from asthma, high blood pressure, and nerve and muscle damage arising from an earlier series of gunshot wounds).

### III. Conclusion

For the reasons set forth above, Defendant Vernon Walker's motion for a reduction in sentence is DENIED.

**SO ORDERED.**

Dated:   New York, New York
        March 25, 2021

                                            John F. Keenan
                                   United States District Judge